UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MALCOLM LEFLORE, ET AL. | CIVIL ACTION |
| VERSUS | No.: 19-1449 |
| NORFOLK SOUTHERN CORP., ET AL. | SECTION: "J" (3) |

## ORDER & REASONS

Before the Court are cross-motions for summary judgment filed by Defendant/Third-Party Plaintiff Archer-Daniels Midland Company ("ADM") **(Rec. Doc. 72)** and Third-Party Defendant Federal Insurance Company ("Federal") **(Rec. Doc. 74)**. Having considered the motions and memoranda, the record, and the applicable law, the Court finds that ADM's motion should be **GRANTED** and Federal's motion should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

This litigation arises from injuries allegedly sustained by Plaintiff Malcolm LeFlore while acting in the course and scope of his employment with Domino Sugar Company ("Domino") at its railyard in Arabi, Louisiana. Plaintiff alleges that his right foot was crushed by a defective or unsafe railcar on or about July 16, 2018, and requires numerous surgeries and future prosthetics. ADM owns the railcar in question and had leased it to Defendant Total Sweeteners, Inc., d/b/a Batory Foods ("Total Sweeteners") prior to the alleged incident.

The Railcar Lease Agreement ("Lease") between ADM and Total Sweeteners required Total Sweeteners to preserve the railcar in good condition and to defend, indemnify, and hold ADM harmless from and against any claim arising out of Total Sweeteners' "default" under the Lease.[1] The Lease also required Total Sweeteners to maintain certain insurance coverage, including comprehensive general liability insurance, and to name ADM as an additional insured "in respect of risks arising out of the condition, maintenance, use or ownership of the [railcar]."[2] Total Sweeteners obtained a comprehensive general liability insurance policy (the "Policy") from Federal that was in effect at the time of Mr. LeFlore's injuries.[3]

In their Fourth Amended Complaint, Plaintiffs Malcolm LeFlore and his wife, Peola LeFlore, asserted claims against ADM as the owner of the railcar, Total Sweeteners as the lessee of the railcar, and Norfolk Southern Corporation ("Norfolk"), who allegedly serviced and delivered the railcar to Domino prior to the incident. Plaintiffs allege that ADM, Total Sweeteners, and Norfolk were negligent in failing to warn Mr. LeFlore of the defective railcar, failing to properly train and supervise Mr. LeFlore, failing to adhere to the Safety Appliance Act and other applicable federal regulations, and failing to properly inspect the railcar. ADM filed a crossclaim against Total Sweeteners and a third party claim against Federal, who filed a counterclaim against ADM. ADM and Federal then filed the instant cross-motions for partial summary judgment.

---

[1] (Lease, Rec. Doc. 72-5, at 5-6).
[2] *Id.* at 4.
[3] (Policy, Rec. Doc. 73-2, at 1).

# LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56); *accord Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue at trial. *See id.* at 325; *Little*, 37 F.3d at 1075.

## **DISCUSSION**

This is an issue of contract interpretation. The Court must first determine whether ADM qualifies as an "insured" under the Policy issued by Federal to Total Sweeteners; if the Court determines that it does, the next question is whether the allegations in Plaintiffs' complaint are sufficient to trigger Federal's duty to defend ADM. *See, e.g.*, *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 594 (5th Cir. 2011). As the Lease provides that it is "governed by the laws of the state of Illinois,"[4] the Court will apply Illinois law.

Under Illinois law, ADM must prove by competent summary judgment evidence that it qualifies as an insured under the Policy for Federal to have a potential duty to defend ADM. *See Pekin Ins. Co. v. Centex Homes*, 72 N.E.3d 831, 837 (Ill. App. Ct. 2017). If it does, then the Court "must compare the allegations in the underlying complaint to the policy language" to determine whether Federal has

---

[4] (Lease, Rec. Doc. 72-5, at 8).

4

a duty to defend ADM. *Id.* at 839 (citation omitted). As explained by the Appellate Court of Illinois:

> An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that bring the case within or potentially within the insured's policy coverage. If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent. In making this determination, the allegations in the underlying complaint must be liberally construed in favor of the insured. Where the facts alleged support multiple theories of recovery, there is a duty to defend if any one of those theories potentially falls within policy coverage. It is the alleged conduct, rather than the labeling of the claim in the complaint, that determines whether the insurer has a duty to defend.
>
> In certain circumstances, the court may look beyond the underlying complaint in order to determine whether an insurer has a duty to defend. Thus, [Illinois courts] have recognized that it may be appropriate to consider the written agreements between the named insured and the additional insured in determining whether the insurer has a duty to defend an additional insured.

*Id.* at 839-40 (internal quotation marks, brackets, and citations omitted).

### I. ADM QUALIFIES AS AN INSURED UNDER THE POLICY

ADM contends that it qualifies as an insured under the provision of the Policy titled "Lessors Of Equipment," which provides:

> Persons or organizations from whom you lease equipment are insureds; but they are insureds only with respect to the maintenance or use by you of such equipment and only if you are contractually obligated to provide them with such insurance as is afforded by this contract.
>
> However, no such person or organizations is an insured with respect to any:
> - damages arising out of their sole negligence; or

5

- occurrence that occurs, or offense that is committed, after the equipment lease ends.[5]

Federal contends that ADM is not an insured because ADM cannot demonstrate the requisite "maintenance or use" of the railcar by Total Sweeteners at the time of the incident because (1) ADM, not Total Sweeteners, was obligated to maintain and repair the defective safety appliances that caused Mr. LeFlore's injuries, and (2) his injuries occurred in connection with switching operations, which do not constitute a "use" of the railcar, citing *Trinidad v. Southern Pacific Transportation Co.*, 949 F.2d 187, 188 (5th Cir. 1991).

Federal's argument about who had maintenance obligations for certain portions of the railcar misconstrues the question before the Court, which is whether Total Sweeteners was engaged in the maintenance or use of the railcar at the time Mr. LeFlore sustained his injuries. It is undisputed that Total Sweeteners was leasing the railcar from ADM at the time of the incident;[6] no party contends that the Lease had terminated. Prior to the incident, Total Sweeteners and Domino entered into an agreement for the purchase of Domino's product.[7] The railcar left Total Sweetener's facility on June 12, 2018, and arrived at Domino's facility on July 10, 2018.[8] There is no indication that the railcar left Domino's facility between the time it arrived and the time of the incident. The incident occurred at Domino's facility on July 16, 2018.[9]

---

[5] (Policy, Rec. Doc. 73-2, at 22).
[6] (Lease, Rec. Doc. 72-5, at 3).
[7] (Total Sweeteners' Resp. to Pls.' Interrogs., Rec. Doc. 82-1, at 5).
[8] *Id.* at 9.
[9] (Rec. Doc. 72-4, at 6).

Based on these facts, the Court finds that Total Sweeteners was engaged in the use of the railcar at the time of the incident because Total Sweeteners had employed the railcar to facilitate the purchase and delivery of product from Domino. While the railcar was not directly in Total Sweeteners' custody or control at the time of the incident, the Court finds that such a narrow construction of the word "use" does not comport with the plain and ordinary meaning of the word.[10] *See, e.g., Virginia Sur. Co. v. N. Ins. Co. of N.Y.*, 866 N.E.2d 149, 153 (Ill. 2007) ("If the contract language is unambiguous, it should be given its plain and ordinary meaning.").

Further, Federal's argument based on *Trinidad* is unavailing. In *Trinidad*, the Fifth Circuit held that certain provisions of the Safety Appliance Act did not apply to a train during predeparture inspection because the train was not "in use." 949 F.2d at 188-89. However, "courts in the Fifth Circuit since *Trinidad* have specified that its holding was limited to 'trains' rather than all rail vehicles." *Barbay v. Union Pac. R.R. Co.*, No. 17-568, 2019 WL 639011, at *2 (M.D. La. Feb. 14, 2019) (denying summary judgment on defendant's claim that the railcar was not "in use" at the time of the accident because it was involved in switching operations); *see also Solice v. CSX Transp. Inc.*, No. 11-1288, 2012 WL 1196668, at *2 (E.D. La. Apr. 10, 2012) (finding that *Trinidad* did not preclude a plaintiff from bringing suit for a handbrake's failure on a railcar during switching operations because *Trinidad*'s holding was limited to "trains"). Moreover, *Trinidad* is inapplicable because it involved interpretation of the

---

[10] Black's Law Dictionary defines "use" as "[t]he application or employment of something; esp., a long-continued possession and employment of a thing for the purpose for which it is adapted, as distinguished from a possession and employment that is merely temporary or occasional." *Use,* BLACK'S LAW DICTIONARY (11th ed. 2019).

7

Safety Appliance Act, *see* 949 F.2d at 188, whereas here the Court is tasked with interpreting an insurance contract.

Next, Total Sweeteners was "contractually obligated to provide [ADM] with such insurance as is afforded by" the Policy.[11] The Lease provides that Total Sweeteners "shall keep or cause to be kept with insurance companies acceptable to [ADM]: (1) comprehensive general liability insurance, including products liability and contractual coverage for the liabilities assume herein, including bodily injury, death, and property damage."[12] The Policy afforded such coverage.[13]

To the extent Federal argues that ADM is not an insured because Mr. LeFlore's injuries arose out of ADM's sole negligence, Federal has failed to present any evidence that ADM acted negligently. While Federal argues that ADM had the sole maintenance obligations for the safety appliances that allegedly caused Mr. LeFlore's injuries, the Lease clearly provides that Total Sweeteners shall "preserve the [railcar] in good condition" and "shall promptly notify [ADM] upon receipt by [Total Sweeteners] of knowledge of any damage to" the railcar.[14] The Lease further provides "that [Total Sweetener's] Maintenance Items shall include (a) damage while in [Total Sweetener's] or [Total Sweetener's] shipper or consignee's possession, custody or control, and (b) damage occurring from use other than permitted under this Agreement."[15] Although ADM bears the burden of proving it was an insured under

---

[11] (Policy, Rec. Doc. 73-2, at 22).
[12] (Lease, Rec. Doc. 72-5, at 4).
[13] (Policy, Rec. Doc. 73-2, at 17).
[14] (Lease, Rec. Doc. 72-5, at 3, 5).
[15] *Id.* at 3.

8

the Policy, Federal's lack of evidence of ADM's negligence fails to create a genuine dispute of material fact and therefore cannot defeat summary judgment. *See Int'l Shortstop*, 939 F.2d at 1265.

Accordingly, the Court holds that ADM was an insured under the Policy because Total Sweeteners was using the railcar leased from ADM at the time of Mr. LeFlore's injuries.

## II. FEDERAL HAS A DUTY TO DEFEND ADM

Having determined that ADM was an insured under the Policy, the Court "must compare the allegations in the underlying complaint to the policy language" to determine whether Federal has a duty to defend ADM. *Pekin*, 72 N.E.3d at 839 (citation omitted).

The Policy provides that Federal "will pay damages that the insured becomes legally obligated to pay by reason of liability imposed by law or assumed in an insured contract for bodily injury or property damage caused by an occurrence to which this coverage applies."[16] The Policy defines "occurrence" as "an accident."[17] The Policy further provides that Federal has "the right and duty to defend the insured against a suit, even if such suit is false, fraudulent or groundless."[18]

Plaintiffs' complaint alleges that Mr. LeFlore was injured by the negligence, negligence per se, and wrongful conduct of Defendants, including ADM, in providing Mr. LeFlore with a hazardous and defective railcar.[19] Specifically, Plaintiffs allege

---

[16] (Policy, Rec. Doc. 73-2, at 17) (cleaned up).
[17] *Id.* at 43.
[18] *Id.* at 18.
[19] (Fourth Am. Compl., Rec. Doc. 39, at 3).

that ADM was negligent by owning a hazardous railcar with defective safety appliances, failing to properly inspect the railcar, failing to warn Domino that the railcar was defective, and failing to properly train and supervise Domino employees.[20] Because the "complaint alleges facts within or potentially within policy coverage," the Court holds that Federal has the duty to defend ADM. *Pekin*, 72 N.E.3d at 139 (internal quotation marks and citation omitted).

### III. FEDERAL'S POLICY IS PRIMARY TO ANY OTHER INSURANCE

Federal contends that, even if ADM is entitled to a defense, Federal is not required to defend ADM because Federal's Policy is not primary to the exclusion of any other policy held by ADM. Federal argues this is so because the Lease does not use the term "primary" to describe the priority of the Policy over other insurance held by ADM. However, the Lease provides that "[a]ll insurance maintained . . . shall provide that . . . any other insurance maintained by [ADM] . . . shall not be contributory or have the effect of suspending, impairing, invalidating or reducing the coverages to be provided and maintained by [Total Sweeteners]."[21] This clearly evidences the parties' intent for the Policy to be primary to any other insurance held by ADM.

Federal further contends that the Policy is at most concurrent with any other insurance held by ADM, based on language in the Policy that Federal would "share with all that other insurance" that is applicable to liability.[22] However, this provision

---

[20] *Id.* at 4-6.
[21] (Lease, Rec. Doc. 72-5, at 4).
[22] (Policy, Rec. Doc. 73-2, at 36).

is not triggered "unless any of [ADM's] other insurance is also primary."[23] As Federal has not presented any evidence of ADM having another insurance policy that was also primary, it is not entitled to summary judgment on this basis.

### IV. WHETHER FEDERAL MUST DEFEND ADM AS AN INDEMNITEE OF TOTAL SWEETENERS

Finally, Federal seeks a summary judgment ruling that it is not required to defend ADM as an indemnitee of Total Sweeteners. Federal first argues that ADM did not properly raise this issue in its third-party complaint against Federal because ADM did not specifically allege that the Lease constitutes an "insured contract" under the Policy. However, ADM's third-party complaint clearly alleges that the Lease required Total Sweeteners to indemnify ADM, that ADM tendered its defense and indemnity to Total Sweeteners, and that Federal refused coverage on behalf of itself and Total Sweeteners.[24] The case cited by Federal, *McGinley v. Luv N Care, Ltd.*, No. 17-821, 2019 WL 320583, at *3 (W.D. La. Jan. 24, 2019), is inapposite, as the court there was confronted with causes of action, rather than allegations, that had not been pleaded.

Moreover, ADM in its motion does not seek to have Federal defend it as an indemnitee of Total Sweeteners but only as an additional insured. Even if the Court were to conclude that Federal was not required to defend ADM as an indemnitee of Total Sweeteners, Federal is required to defend ADM as an additional insured, as explained above. To the extent Federal argues that the insurance provisions of the

---

[23] *Id.*
[24] (Rec. Doc. 51, at 21, 25).

Lease are somehow restricted by the indemnity clause, the Court disagrees, as the Lease contains no such limiting language. The Court will deny summary judgment as to this claim.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that ADM's *Motion for Partial Summary Judgment* **(Rec. Doc. 72)** is **GRANTED** and Federal's *Motion for Partial Summary Judgment* **(Rec. Doc. 74)** is **DENIED**.

New Orleans, Louisiana, this 15th day of January, 2020.

*[signature]*

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE